## Ex PARTE MARCHANT et al.

(District Court, N. D. California, First Division. January 30, 1925.)

Nos. 18449, 18452.

1. Aliens ⬯53—Alien seaman not having the proper certificate and consular visé held not entitled to remain.

Under Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), and Immigration Act May 26, 1924, an alien seaman, who entered the United States as deserter from a foreign ship and thereafter was employed in coastwise trade, is nevertheless subject to be deported if he has no certificate or visé showing his lawful entry, and the fact that he has filed a declaration of intention to become a citizen does not entitle him to remain.

2. Aliens ⬯53—Seaman without certificate or visé not permitted to remain indefinitely because of service in merchant marine or filing of declaration of intention to become citizen.

Under Immigration Act 1917, § 33 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼rr), and Immigration Act of 1924, and the General Orders issued by the Secretary of Labor relative to the temporary admission of alien seamen, held, that an alien seaman entering without certificate or visé cannot evade the restrictions of the immigration statutes by service in the merchant marine and declarations of intention of becoming an American citizen.

Petition for writs of habeas corpus by William Marchant and Fritz Spruytenburg, alien seamen, to procure their release from the custody of immigration officers. Petitions dismissed, and petitioners remanded.

Sterling Carr, U. S. Dist. Atty., of San Francisco, Cal., for United States.

Cedric W. Petersen, of Oakland, Cal., for petitioners.

PARTRIDGE, District Judge. The petitioners in these cases sought writs of habeas corpus, alleging that they were illegally restrained of their liberty by the immigration authorities. Orders to show cause were issued, and returns thereto made by the government.

The petitioners were arrested in warrant proceedings instituted by the immigration authorities, it being charged in the warrant of arrest as to each that he "is subject to be taken into custody and returned to the country whence he came under section 19 of the Immigration Act of Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), being subject to deportation under the provisions of a law of the United States, to wit, the Immigration Act approved May 26, 1924 (43 Stat. 153), in that he is not in possession of an unexpired immigration visé, * * *" and that "it appears that the said alien has been found in the United States in violation of the Immigration Act of February 5, 1917, for the following among other reasons: That he was a person likely to become a public charge at the time of his entry; and that he entered by water at a time or place other than as designated by the immigration officials."

The admitted facts are as follows:

These men both entered the United States as deserters from foreign ships upon which they were employed as seamen.

Spruytenburg, a native and subject of the Netherlands, immediately after the departure of the ship which brought him here on or about the 17th day of June, 1923, obtained work on land for a short period, and then obtained employment as a waiter on the steamship Wilhelmenia, of American registry, plying between San Francisco and Honolulu, in the coastwise trade (section 21, Merchant Marine Act 1920 [Comp. St. Ann. Supp. 1923, § 8146¼ggg]), which employment he has continuously engaged in from the date of his entering upon the same within a brief period after his arrival in this country up to the date of his arrest. During all of said time the alien at no time presented himself for examination and inspection before the immigration officials of the United States for the purpose of having determined the legality of his entry into the United States, nor during said period did

said alien pay the head tax prescribed of aliens legally admitted into the United States. However, it is claimed that in the month of August, 1924, he sought to pay the head tax prescribed to be paid by alien seamen, who have no intention to reship foreign, and are found to be legally entitled to admission into the United States, and in the latter part of the month of August, 1924, the said alien filed a declaration of intention to become a citizen of the United States, in which said declaration he solemnly declared under oath that it was his intention ·"in good faith to become a citizen of the United States of America and to permanently reside therein."

The alien Marchant, a native and subject of Great Britain, deserted his ship, the British ship Clydsdale, in Seattle, Wash., on or about the 28th day of December, 1923, and practically continuously from said date to the date of his arrest was engaged as a seaman on board American ships plying in the coastwise trade on the Pacific Coast.

The said Marchant at no time during said period from the date of his arrival to the date of his arrest was examined by the Bureau of Immigration, United States Department of Labor, respecting his qualifications for admission to the United States, nor during said period did said alien pay the head tax prescribed of aliens legally admitted into the United States.

However, the said alien did, in the month of September, 1924, file a declaration of intention to become a citizen of the United States of America, in which said declaration he, under oath, solemnly declared it was his intention "in good faith to become a citizen of the United States of America and to permanently reside therein."

In each of the cases above mentioned, pursuant to said warrants, the Board of Special Inquiry examined the aliens, in the presence of their counsel; the chairman of the board in each case moving that it be recommended that the "detained" be excluded and deported to the country from whence he came.

[1] The petitioners urge, as the basis of their right to release, that they landed with intent to reship foreign, and that, finding it impossible to obtain positions on vessels engaged in foreign trade, they took temporary employment upon coastwise ships. Upon the argument, it was in effect admitted that unless petitioners landed with intent to reship foreign, they are illegally in the country, and hence are subject to arrest and deportation. It may be said, however, with

equal truth that though they may have had such intent when they landed, if they abandoned that intent, their presence here is likewise illegal. This must be so; for the clear intent of the law is to prevent alien sailors from coming ashore, and using their status as seamen to circumvent the immigration statutes. Intent, of course, is to be gathered not alone from what a man says, but from what he does. These men shipped on coastwise vessels; they have filed their declarations of intention to become citizens, and in those declarations have alleged their intention to permanently reside in the United States. Supposing, then, they should remain for three years on coastwise vessels; clearly, that would entitle them to citizenship. I have recently had occasion to examine that subject in In re Linklater (D. C.) 3 F.(2d) 691, and have concluded that they would be so entitled, even though their original landing was illegal. It might be said, of course, that their expressed intention was equally consistent with an intent to ship on American ships engaged in foreign commerce. And the petitioners contend that their actual shipment on coastwise vessels was only temporary, and owing to the fact that they could not obtain employment in foreign commerce. But if a man could ship in coastwise trade for a voyage, or a month, he could indefinitely continue this practice, until his three years had elapsed and he became eligible for citizenship, and thus entirely circumvent the law. The pertinent portion of that law is the latter part of section 33 of the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼rr), which reads:

. "Provided, that in case any such alien intends to reship on board any other vessel bound to any foreign port or place, he shall be allowed to land for the purpose of so reshipping, under such regulations as the Secretary of Labor may prescribe to prevent aliens not admissible under any law, convention, or treaty from remaining permanently in the United States, and may be paid off, discharged, and permitted to remove his effects, anything in such laws or treaties or in this act to the contrary notwithstanding, provided due notice of such proposed action be given by the master or the seaman himself to the principal immigration officer in charge at the port of arrival."

In pursuance of that section, the Secretary of Labor has adopted section C of par-

agraph 6, General Orders No. 38, as follows:

"Where a bona fide alien seaman, serving as such on a vessel arriving at a port of the United States, and permitted to enter temporarily the United States solely in pursuit of his calling as a seaman, engages in any other calling or occupation for hire or profit, or enters into the coastwise trade of the United States, or remains within the United States for more than sixty days after such entry, he shall be deemed to have abandoned his status as a nonimmigrant within the meaning of subdivision (5) of section 3 of the Immigration Act of 1924, and shall be taken into custody and deported at any time thereafter in accordance with the provisions of section 14 of said act."

[2] These provisions would seem to be conclusive of the case. It is contended, however, on the part of petitioners, that the regulations are ex post facto as to them. I cannot so view the matter, and in any event the regulations are thoroughly in accordance with reason, and the true intent of the statutes. Under the quota law of 1924, the Congress, by requiring a consular visé, had undertaken to provide means by which intolerable conditions are remedied. The effect of it is to allow only as many aliens as are entitled to admission to set sail for our shores. The effect of this would be nullified if seamen, without visé, should land with the declared intention of shipping foreign, and then proceed to declare for citizenship on the basis of service on coastwise ships, and under the thin pretense that at some undefined and indeterminable period in the future they would ship foreign. I think, therefore, that the petitions must be dismissed, the rules to show cause discharged, and the detained men remanded.

It is so ordered.